LARSEN *v.* MUEHL.

1. BILLS AND NOTES—MORTGAGES—OWNERSHIP.
   Ownership of a note, secured by a mortgage, carries equitable ownership of the latter.

2. MORTGAGES—ESTATES OF DECEDENTS—SUPERIOR LIENS—EVIDENCE.
   In suit to establish lien superior to that of estate of mortgagee, administratrix of which had foreclosed mortgage, that had not been found among mortgagee's papers, against mortgagor and wife and plaintiff's alleged assignor, evidence *held*, insufficient to justify division of the mortgage debt between plaintiff and administratrix.

3. SAME—BILLS AND NOTES—DEFECTIVE TITLE.
   Title of plaintiff's assignor to bearer note and mortgage securing it *held*, defective within meaning of 2 Comp. Laws 1929, § 9304, where assignor lived in mortgagee's house alone three days after her death, allowed large credit to mortgagor and sacrificed upon sale to plaintiff.

4. SAME—FORECLOSURE—DEFECTIVE TITLE—BURDEN OF PROOF.
   In suit to foreclose mortgage by holder of bearer note which was secured thereby, who did not have an assignment from original mortgagee, burden is cast on purchaser to show he is a holder in due course, since title in his assignor is defective (2 Comp. Laws 1929, §§ 9304, 9308).

5. SAME—BILLS AND NOTES—HOLDER IN DUE COURSE—BURDEN OF PROOF—EVIDENCE.
   Plaintiff, assignee of bearer note secured by mortgage *held*, not to have sustained his burden of proof that he was a holder in due course of note as defined in 2 Comp. Laws 1929, § 9301, under evidence showing that prior to his purchase note remained unpaid about seven weeks after last agreed due date, novelty in plaintiff, a painter, in making such a purchase and circumstances under which he obtained the instruments, hence he is not entitled to foreclose mortgage against administratrix of estate of original mortgagee.

Appeal from VanBuren; Warner (Glenn E.), J. Submitted April 15, 1936. (Docket No. 109, Calendar No. 38,883.) Decided June 16, 1936.

Bill by Fred Larsen against Auguste Muehl, as executrix of the last will of Minna Schnell, deceased, Ivar Martinsen and wife, Arist Koliakopoulos and Leo J. Lamberson to foreclose a real estate mortgage and for other relief. From decree rendered, plaintiff appeals and defendant Muehl cross-appeals. Reversed and bill ordered dismissed as to defendant Muehl.

*Lewis R. Williams,* for plaintiff.

*David Anderson* and *David Anderson, Jr.* (*Frank Platka,* of counsel), for defendant Muehl.

FEAD, J. The bill was filed to foreclose a real estate mortgage. The issue between the parties to this appeal is as to its ownership. Plaintiff has no assignment of the mortgage from the original mortgagee, but it is conceded that ownership of the note, secured by the mortgage, carries equitable ownership of the latter. The court entered decree for foreclosure of a superior claim of plaintiff in the sum of $449.26, and both plaintiff and defendant Muehl appeal.

November 9, 1917, Ivar Martinsen and wife executed to Minna Schnell, of Chicago, a real estate mortgage covering a farm in Michigan, to secure a note for $3,000, payable to the order of bearer and due in five years. The interest payments were represented by serial notes. By separate instruments, Mrs. Schnell extended the due date of the principal sum at five-year periods to November 9, 1932. She died December 31, 1930. Defendant Muehl was ap-

pointed executrix of her estate in Illinois. All interested parties hereto live in Chicago.

Plaintiff's claim comes through Arist Koliakopoulos, who had boarded at Mrs. Schnell's home since 1927. He was alone in the house for three days after her death. Considerable personal property was missing. The note and mortgage could not be found by Mrs. Schnell's relatives. In January, 1931, Koliakopoulos filed lien against the Schnell home for $312, but did nothing more about it except that his attorney demanded settlement in August, 1932.

Defendant Muehl knew Mrs. Schnell had had the mortgage and, on January 7, 1931, she wrote Martinsen asking for the interest due the preceding November, and was informed it had been paid to Mrs. Schnell. At various times she and her attorney notified Martinsen that the note and mortgage were lost or stolen, warned him to pay no one else, and attempted to get duplicates executed. Martinsen deposited $165, interest for 1931, in a Chicago bank, to be paid on presentation of the interest notes. The bank afterwards closed its doors.

Defendant Muehl could not find the note and mortgage. In August, 1932, Koliakopoulos appeared at Martinsen's farm claiming ownership of both. He had made no prior claim to ownership or possession of them either to defendant Muehl or Martinsen. In December, when threatened with arrest by defendant Muehl's attorney unless he delivered them up, Koliakopoulos said he would destroy them rather than surrender them.

In December, 1932, Koliakopoulos and Martinsen made some unusual and unexplained adjustments and agreements. December 2d they executed an instrument allowing a credit of $1,100 on the note, accepting $100 in payment of $165 interest for 1932,

reciting the claim of defendant Muehl to the mortgage and agreeing to execute and receive a new two-year mortgage for $1,900 in discharge of the original if Koliakopoulos should establish his title to the note and mortgage. A little later, however, and without any reason shown upon the record, they made other arrangements. December 20th, the notes for the 1931 interest of $165 were surrendered to Martinsen in consideration of the assignment of his claim against the closed Chicago bank. December 27th, Koliakopoulos and Martinsen consulted an attorney in Chicago and executed an instrument, drafted by her, reciting and allowing the credit of $1,100 and unequivocally extending the due date of the principal of $1,900 for five years from November 9, 1932. The instrument contains no suggestion of doubt of Koliakopoulos's title nor provision for clearing it.

The same Chicago attorney who drafted the last mentioned instrument conducted plaintiff's claimed purchase of the note and mortgage from Koliakopoulos. She drafted an assignment of the mortgage from Koliakopoulos to plaintiff, although the former had no assignment running to him. The assignment was dated April 18, 1933, and was not acknowledged. It recited a consideration of $100 and other valuable considerations. Plaintiff claims he paid $500, but presented no evidence of payment except his own statement. It is claimed the note was delivered to plaintiff at the time, but the mortgage was not present. Nevertheless the assignment to plaintiff states the liber and page of the mortgage record.

Plaintiff's attorney said she made two trips to Michigan, one in April, 1933, to examine the records and to notify Martinsen that plaintiff was able to buy the note and mortgage. At that time she saw or was told about the agreement of December 2d, but

she denies knowledge or notice of doubt as to Koliakopoulos' title. In the fall she obtained the mortgage at Benton Harbor from Koliakopoulos' former attorney, who held it on claim of lien for services.

January 23, 1934, ancillary letters testamentary in the Schnell estate were issued to defendant Muehl in Van Buren county, Michigan. February 15th, she filed bill in chancery to foreclose the mortgage, naming Martinsen and wife, who were personally served, and Koliakopoulos and his former attorney, served by registered mail, as defendants. All defendants defaulted and decree *pro confesso* was entered July 17th and sale afterward had.

Plaintiff claims to have purchased the instruments after the above suit was begun and without knowledge of it. Defendant Muehl did not know of his claim until the instant bill was filed, October 10, 1934, by plaintiff.

The court held plaintiff entitled to a superior lien for $500, with interest, less payments, as assignee of Koliakopoulos, on the ground that the latter had taken the mortgage for a debt of $500 owing by Mrs. Schnell. Koliakopoulos' testimony was taken subject to the objection that it was equally within the knowledge of the deceased (3 Comp. Laws 1929, § 14219), which objection the court sustained but with the remark that, if it had been admissible, it was "fantastically incredible." We find no testimony which justifies a division of the mortgage debt. It is wholly owned by either plaintiff or defendant Muehl.

Koliakopoulos' opportunity to abstract the note and mortgage, his concealment of them, his allowance of credits and sacrifice on sale, all without explanation of how he procured the instruments and why he allowed the credits and ultimately sold a

$3,000 obligation for $500, and his general conduct, render it convincing that his possession of the instruments was not lawful.

Plaintiff had been a painter for 30 years. He had never bought a note or mortgage before. He said he learned that Koliakopoulos owned the instruments in August, 1932, at Martinsen's farm, but was not told of any doubt of their title. He said he purchased them because Koliakopoulos said he needed a few dollars and he, plaintiff, had some money which he kept at home because he did not trust the banks. So he offered to buy the mortgage.

The case suggests several questions which need not all be considered. Koliakopoulos' title to the instruments was defective. 2 Comp. Laws 1929, § 9304. This cast upon plaintiff the burden of proof that he was holder in due course of the note. 2 Comp. Laws 1929, § 9308; *Central State Bank* v. *Zelli,* 260 Mich. 361. Even if the separate agreements by Mrs. Schnell to extend the due date of the note may be read into it (and we do not so decide), nevertheless the note had been wholly dishonored, at least from November 9th, the last agreed due date, to December 27, 1932, the date of the execution of the extension by Koliakopoulos and Martinsen. Aside from the strict legal effect of such dishonor, the novelty of plaintiff making such a purchase, and the circumstances under which he obtained the instruments, preclude the finding that plaintiff was a holder in due course as defined in 2 Comp. Laws 1929, § 9301.

It seems hardly credible that the attorney who represented plaintiff and had represented Koliakopoulos was not fully cognizant of the defect in the latter's title and that she did not inform plaintiff; that plaintiff would have paid a substantial sum of

money without immediate delivery of the mortgage; and that he would have paid without production of an assignment of the mortgage from Mrs. Schnell to Koliakopoulos, or that his attorney would have permitted it.

The testimony also leaves us in doubt whether plaintiff paid anything at all, and it is not explained how the liber and page of the record of the mortgage got into the assignment from Koliakopoulos to plaintiff without the mortgage being present. The radical discount at which the note and mortgage were sold and the fact that the transaction occurred after defendant Muehl had brought foreclosure proceedings against Koliakopoulos and the latter found himself unable to defend his possession of the instruments give ground of suspicion. Taken together, the circumstances are quite persuasive that plaintiff was substituted for Koliakopoulos in an effort to make his abstraction of the note and mortgage effective and that he knew the situation. In any event, he has not sustained the burden of proof that he was a holder in due course of the note.

Reversed, with costs, and decree will be entered for defendant Muehl dismissing plaintiff's bill.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.